493 A.2d 408

**PHARMAKINETICS LABORATORIES, INC.**

v.

**COMPTROLLER OF the TREASURY.**

**No. 1413, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 11, 1985.

Christopher R. West, Baltimore (Gebhardt & Smith, Baltimore, on brief), for appellant.

Deborah B. Bacharach, Asst. Atty. Gen., Baltimore, (Stephen H. Sachs, Atty. Gen. and Linda Koerber Boyd, Asst. Atty. Gen., Baltimore, on brief), for appellee.

Argued before GILBERT, C.J., and MOYLAN and BISHOP, JJ.

GILBERT, Chief Judge.

The appellant, Pharmakinetics Laboratories, Inc. (Pharmakinetics) claims that it is engaged in "research and development." Thus, it says, it is exempt from retail sales tax and use tax as to certain company purchases of materials. A hearing examiner for the Comptroller of the Treasury, the Maryland Tax Court, and the Circuit Court for Baltimore City (Allen, J.) have each in turn ruled that Pharmakinetics is not a research and development lab. Consequently, as the matter reaches us, Pharmakinetics must pay the assessed taxes.

Four witnesses testified before the tax court on behalf of Pharmakinetics. The Comptroller offered no witnesses, but did submit a draft of a registration statement prepared by Pharmakinetics for use with the Securities and Exchange Commission (SEC).

The record before us shows that Pharmakinetics performs bioavailability and bioequivalency studies for drug companies on a contractual basis. The purpose of such studies is to determine the rate and extent that an active drug ingredient or therapeutic component is present in the bloodstream of a person who is given a certain drug formulation. These tests are required by the Food and Drug

Administration (FDA) before marketing of the drug is permitted.

Bioavailability testing compares the effectiveness of a particular formulation, *e.g.*, a tablet, with the pure form of the drug. Bioequivalency testing determines the comparative bioavailabilities for an existing drug on the market *vis a vis* a new product that will potentially replace or serve as a substitute for an existing drug; for example, a generic drug substituting for an original brand name version.

These studies are conducted according to "protocols," or methodologies, written by Pharmakinetics' specialist staff. Each drug study requires the development of a unique protocol.

Md.Ann.Code art. 81, §§ 326 and 375 provide that materials used in research and development are exempt from retail sales tax and use tax. Section 324(t) defines "research and development" to mean:

> "[B]asic and applied research in the sciences and engineering, and the design and development of prototypes and processes. Excluded from this definition are routine product testing, market research, sales promotion, sales service, research in the social sciences or psychology, and other nontechnical activities or technical and nontechnical services."

The tax court concluded that Pharmakinetics' operation "falls somewhere in between the clearly definable categories as set forth in the statute." Pharmakinetics' work, the tax court said, goes beyond "routine product testing" and yet does not "altogether meet the requirements of 'basic and applied research.' " Inasmuch as tax exemptions must be strictly construed against the taxpayer, the court held that the exemption be denied because the taxpayer did not meet its burden of proof. The circuit court agreed.

 Md.Ann.Code art. 81, § 229 (*o*) provides, in pertinent part:

"The circuit court shall affirm the Tax Court order if it is supported by substantial evidence appearing in the record."

Where there is no error of law, "the reviewing court may not reverse the Tax Court's order if substantial evidence of record supports the agency's decision." *Ramsay, Scarlett & Co., Inc. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296, 1301 (1985). Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* quoting *Comptroller v. Haskin,* 298 Md. 681, 693, 472 A.2d 70, 76 (1984). In applying the substantial evidence test, the Court of Appeals has cautioned that "a reviewing court may not substitute its judgment for the expertise of the agency; that we must review the agency's decision in the light most favorable to it; that the agency's decision is prima facie correct and presumed valid; and that it is the agency's province to resolve conflicting evidence and where inconsistent inferences can be drawn from the same evidence it is for the agency to draw the inferences." *Id.*

■ Because of our narrow scope of review, we must hold that the circuit court was correct to affirm the decision of the tax court. Based on the evidence presented to the tax court, a reasonable person could infer that Pharmakinetics did not meet its burden of proving that it performs research. There is adequate evidence to support the tax court's conclusion that Pharmakinetics conducts not research, but testing, albeit technically sophisticated testing rather than "routine testing."

Although the witnesses characterized Pharmakinetics' work as "research," each witness was in some manner connected to Pharmakinetics, either as an owner, employee or otherwise. The SEC statement, on the other hand, continually referred to Pharmakinetics as a "testing" facility. The statement did not use the word "research" at all. The tax court accepted the characterization found in the SEC report and apparently gave little, if any, weight to the witnesses' consistent use of the conclusive term "research."

There was also evidence presented that once a drug formulation reaches Pharmakinetics, the drug has already been developed by the drug company to the point where it is ready for market, but for the FDA tests. A reasonable person could conclude that it is the drug company and not Pharmakinetics that engages in the research and development which culminate in drug formulations.

Although we might, on the basis of the evidence, have arrived at a different decision, it is not our function to "second guess" the fact finder. There was adequate evidence to support the tax court's findings. We hold, therefore, that the circuit court did not err in affirming the tax court's decision.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.